ADAM GORDON
United States Attorney
BETSEY BOUTELLE
Assistant U.S. Attorney
California Bar No. 299754
United States Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: (619) 546-8764
Facsimile: (619) 546-7751
Email: betsey.boutelle@usdoj.gov

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF SAN DIEGO, CITY OF SAN JOSE,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE, et al.,<br><br>Defendants. | Case No.: 26-cv-00615-CAB-VET<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge: Hon. Cathy Ann Bencivengo<br><br>**PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT** |

# TABLE OF CONTENTS

PAGE(S)

I.    INTRODUCTION ...............................................................................................1

II.   FACTUAL BACKGROUND..............................................................................2

III.  LEGAL STANDARD .........................................................................................5

IV.   ARGUMENT.......................................................................................................6

    A.   Plaintiffs Are Unlikely to Succeed on the Merits of Their Claims...............6

        1.   The Anti-Discrimination Condition is authorized by statute and is constitutional. ....................................................6

        2.   Plaintiffs' constitutional and statutory challenges fail.........................9

            i.    The Anti-Discrimination Condition does not violate the separation of powers. ...........................................9

            ii.   The Anti-Discrimination Condition does not violate the Spending Clause. ..................................................11

            iii.  The Anti-Discrimination Condition does not violate the Fifth Amendment.................................................13

            iv.   The Anti-Discrimination Condition does not violate the APA. ................................................................14

    B.   Plaintiffs Will Not Suffer Irreparable Harm in the Absence of Immediate Relief .........................................................................15

    C.   The Balance of Equities Weighs in the Government's Favor....................16

    D.   Any Injunctive Relief Should be Accompanied by a Bond ........................17

V.    CONCLUSION.................................................................................................18

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Agency for International Development v. Alliance for Open Society International, Inc.,*
570 U.S. 205 (2013) ................................................................................................ 15

*Al Otro Lado v. Executive Office for Immigration Review,*
138 F.4th 1102 (9th Cir. 2025) .............................................................................. 10

*Building & Construction Trades Department, AFL-CIO v. Allbaugh,*
295 F.3d 28 (D.C. Cir. 2002) ................................................................................... 8

*Caribbean Marine Services Co. v. Baldridge,*
844 F.2d 668 (9th Cir 1988) .................................................................................. 15

*City of Los Angeles v. Barr,*
929 F. 3d 1163 (2019) ...................................................................................... passim

*College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board,*
527 U.S. 666 (1999) ............................................................................................... 11

*Dalton v. Specter,*
511 U.S. 462 (1994) ..................................................................................... 9, 10, 16

*Department of Education v. California,*
604 U.S. 650 (2025) ............................................................................................... 17

*Federal Communications Commission v. Prometheus Radio Project,*
592 U.S. 414 (2021) ............................................................................................... 15

*Garcia v. Google, Inc.,*
786 F.3d 733 (9th Cir. 2015) ................................................................................... 5

*Guardians Association v. Civil Services Commission,*
463 U.S. 582 (1983) ............................................................................................. 6, 7

*National Association of Diversity Officers in Higher Education v. Trump,*
167 F.4th 86 (4th Cir. 2026) .................................................................................... 8

*Lincoln v. Vigil,*
508 U.S. 182 (1993) ............................................................................................... 14

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
  571 F.3d 873 (9th Cir. 2009) ........................................................................................ 5

*Mayweathers v. Newland*,
  314 F.3d 1062 (9th Cir. 2002) ..................................................................................... 12

*Motor Vehicle Manufacturers Association v. State Farm Mutual Auto Insurance Co.*,
  463 U.S. 29 (1983) ...................................................................................................... 15

*National Federation of Independant Business v. Sebelius*,
  567 U.S. 519 (2012) ................................................................................................ 11, 12

*National Treasury Employees Union v. Trump*, No. 25-5157,
  No. 25-5157, 2025 WL 1441563 (D.C. Cir. May 16, 2025).......................................... 17

*New York v. National Science Foundation*,
  793 F. Supp. 3d 562 (S.D.N.Y. 2025) ......................................................................... 10

*Nken v. Holder*,
  556 U.S. 418 (2009) .................................................................................................. 5, 16

*Pennhurst State School & Hospital v. Halderman*,
  451 U.S. 1 (1981) ..................................................................................................... 11, 12

*San Francisco A.I.D.S. Foundation v. Trump*,
  786 F. Supp. 3d 1184 (N.D. Cal. 2025)........................................................................ 9

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
  739 F.2d 1415 (9th Cir. 1984)....................................................................................... 5

*South Dakota v. Dole*,
  483 U.S. 203 (1987) ................................................................................................... 12

*Trump v. Boyle,*
  145 S. Ct. 2653 (2025).................................................................................................. 17

*Universal Health Services, Inc. v. United States ex rel. Escobar*,
  579 U.S. 176 (2016) ...................................................................................................... 7

*Winter v. Natural Resources Defense Council, Inc.*,
  555 U.S. 7 (2008) ............................................................................................... 5, 15, 16

*Defendants' Opposition to Plaintiffs' Motion*      iii      26-cv-00615-CAB-VET
*for Preliminary Injunction*

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1952) ...................................................................................... 10

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. I, § 8, cl. 1 ........................................................................ 11

**STATUTES**

5 U.S.C. § 701(a)(2) .................................................................................... 14
31 U.S.C. § 3729-3730 ................................................................................. 3
31 U.S.C. § 3729(a) ...................................................................................... 7
34 U.S.C. § 21116(a)(2) ............................................................................... 2
42 U.S.C. § 2000d ................................................................................. 6, 10

**RULES**

Federal Rule of Civil Procedure 65(c) ....................................................... 17

**REGULATIONS**

2 C.F.R. Part 200 ........................................................................................... 3
2 C.F.R. § 200.211(c)(1)(ii) ................................................................... 6, 10
2 C.F.R. § 200.300(a) .............................................................................. 6, 10
2 C.F.R. § 200.303(b) .............................................................................. 6, 10

**ACTS OF CONGRESS**

PROTECT Our Children Act of 2008,
   Pub. L. No 110–401 ............................................................................. 2, 10
Commerce, Justice, Science, and Related Agencies Appropriations Act, 2024,
   Pub. L. No. 118-42 ..................................................................................... 2
Full-Year Continuing Appropriations Act, 2025,
   Pub. L. No. 119-4, 139 Stat. 9, 40, ......................................................... 2

## I.    INTRODUCTION

To receive federal funding, grant recipients must generally enter into grant agreements with the government, in which the recipients agree to comply with certain conditions in exchange for federal dollars. In particular, grant recipients are routinely required to certify that they are aware of and compliant with applicable federal laws.

Plaintiffs are two California municipal governments who have successfully applied for federal money under the Internet Crimes Against Children (ICAC) grant program. To accept their awards and receive the funds, they must now certify their compliance with federal nondiscrimination laws, among several other conditions. But Plaintiffs object to a particular condition ("the Anti-Discrimination Condition") contained in their award package and have brought this suit asking the Court to strike it down. Yet far from being unlawful, the Anti-Discrimination Condition merely requires grant recipients to comply with settled civil rights and nondiscrimination laws. As explained below, the condition plainly falls within the relevant agencies' constitutional and statutory authority and is not arbitrary and capricious.

Plaintiffs have filed a motion for a preliminary injunction asking this Court to enjoin DOJ's enforcement of the Anti-Discrimination Condition, and to order that Plaintiffs be allowed to collect their grants while being held to a different version of the term. *See generally* ECF Nos. 6, 6-1. But Plaintiffs fail to show that they are entitled to preliminary relief. Plaintiffs contend that absent an injunction, they may be forced to forgo grant funds and imperil their ICAC programs. Yet plaintiffs can avoid such harms by accepting the Anti-Discrimination Condition during the pendency of this litigation. Plaintiffs have not attempted to show that doing so would be costly, particularly because the Anti-Discrimination Condition largely mirrors Plaintiffs' existing legal obligations. On the other side of the ledger, the government and the public have a strong interest in ensuring that grant recipients comply with federal law and do not receive disbursements of potentially unrecoverable federal funds without first complying with the lawful and uniform conditions set by federal agencies.

Defendants respectfully request that this Court deny Plaintiffs' motion.

## II.    FACTUAL BACKGROUND

This case concerns a federal grant program administered by the Department of Justice's Office of Justice Programs (OJP). The Internet Crimes Against Children (ICAC) Task Force program was developed in 1998, in response to an ever-increasing number of children and teenagers using the Internet, an ever-increasing number of online images depicting child sexual abuse, and an ever-increasing amount of online activity by people seeking to contact and exploit children and teens. *See* Declaration of Maureen Henneberg, ¶ 6. The program is a multinational and multijurisdictional network of 61 ICAC task forces—consisting of nearly 5,500 federal, state, local, and Tribal law enforcement and prosecutorial agencies—throughout the United States. *Id.*

ICAC helps state and local law enforcement agencies develop an effective response to technology-facilitated child sexual exploitation and Internet crimes against children. *Id.* ¶ 7. This assistance encompasses forensic and investigative components, training and technical assistance, victim services, and community education. *Id.* The cities of San Diego and San Jose have applied for and been awarded ICAC grants in the past. *Id.* ¶ 15.

In November 2025, the Office of Juvenile Justice and Delinquency Prevention (a component office of OJP) posted a Notice of Funding Opportunity, or "NOFO," for the Fiscal Year 2025 ICAC Task Force Program, soliciting applications for ICAC grant awards. *Id.* ¶ 13. The "Statutory Authority" for the FY 2025 NOFO was clearly identified as the "Full-Year Continuing Appropriations Act, 2025, P.L. 119-4, 139 Stat. 9, 40; see Pub. L. No. 118-42, 138 Stat. 25, 150." ECF No. 1 at 44 (NOFO).[1] The deadline for the grant

---

[1] The Full-Year Continuing Appropriations Act, 2025, made funds available under applicable authorities enacted in the Commerce, Justice, State, and Related Agencies Appropriations Act, 2024. Specifically, that law authorized funds "for missing and exploited children programs, including as authorized by sections 404(b) and 405(a) of the 1974 Act (except that section 102(b)(4)(B) of the PROTECT Our Children Act of 2008 (Public Law 110–401) shall not apply for purposes of this Act)." Henneberg Decl. ¶ 9. Because ICAC task force funds are not authorized pursuant to the PROTECT Our Children Act, OJP is not statutorily required to use the formula found in 34 USC § 21116(a)(2) when determining individual ICAC task force funding levels. *Id.* ¶ 10.

application was December 8, 2025. ECF No. 1 at 41. Plaintiffs, the cities of San Diego and San Jose, submitted applications. ECF No. 1 at 10–11.

Grant programs administered by OJP are subject to agreements or assurances that may be updated to reflect current law and policy. *See* Henneberg Decl. ¶¶ 11–15. In December 2025, OJP approved Plaintiffs' respective applications and sent each city a Pre-Acceptance Award Package. Henneberg Decl. ¶ 14. Each award package sets forth 50 conditions that Plaintiffs must accept and/or certify to receive their grant awards. ECF No. 1 at 68–94 (San Diego award letter and conditions); 126–148 (same for San Jose). Those conditions include, for example, not "not us[ing] direct Federal financial assistance" to "support or engage in any explicitly religious activities except when consistent with the Establishment Clause" (Condition 3, ECF No. 1 at 75); complying with the Uniform Administrative Requirements, Cost Principles, and Audit Requirements set forth in 2 C.F.R. Part 200 (Condition 7, ECF No. 1 at 77); complying with "all applicable rules regarding approval, planning, and reporting of conferences, meetings, trainings, and other events" (Condition 10, ECF No. 1 at 78); and complying with "notice requirements that covered recipients must follow regarding the dissemination of information regarding federal nondiscrimination requirements" (Condition 13, ECF No. 1 at 79). Plaintiffs do not appear to object to any of these conditions or deny OJP's authority to impose them.

However, Plaintiffs object to Condition 4, the "Anti-Discrimination Condition," which provides as follows:

> The recipient agrees that its compliance with all applicable Federal civil rights and nondiscrimination laws is material to the government's decision to make this award and any payment thereunder, including for purposes of the False Claims Act (31 U.S.C. 3729-3730 and 3801-3812), and, by accepting this award, certifies that it does not operate any programs (including any such programs having components relating to diversity, equity, and inclusion) that violate any applicable Federal civil rights or nondiscrimination laws.

Henneberg Decl. ¶ 14; ECF No. 6-5 at 15–16. Plaintiffs have previously accepted grant awards with the acknowledgement that they must comply with grant conditions, including civil rights and nondiscrimination laws. Henneberg Decl. ¶ 15. The updated language

*Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction*          3          26-cv-00615-CAB-VET

referring to "diversity, equity, and inclusion" does not state—or require Plaintiffs to agree—that any or all "DEI programs" necessarily violate federal anti-discrimination law. *Id.* ¶ 16. Rather, it merely requires Plaintiffs to certify that they do not operate any programs (whether DEI or otherwise) that violate federal civil rights or anti-discrimination laws. *Id.*

The original deadline for Plaintiffs to accept their grant awards was February 6, 2026. ECF No. 1 at 10, 11. Instead, Plaintiffs filed this lawsuit, arguing that the Anti-Discrimination Condition was unlawful.[2] On February 9, 2026, Plaintiffs filed a motion for a preliminary injunction, asking that the Court "[e]njoin Defendants from imposing, enforcing, or implementing"

> [a]ny condition requiring Plaintiffs or subrecipients to certify that they do not operate any programs (including programs having components relating to diversity, equity, and inclusion) that violate any applicable Federal civil rights or nondiscrimination laws, *as interpreted in the July 29, 2025 Memorandum from Attorney General Pamela Bondi titled "Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination" or any substantially similar guidance*, and any condition providing that the use of funds for any program or activity that "unlawfully favor[s] individuals in any race or protected group, including on a majority or minority, or privileged or unprivileged, basis" constitutes an unallowable use of funds. *Instead, requiring that these terms be interpreted as encompassing the current meanings of lawful DEI programs and anti-discrimination provisions* as those have been interpreted by the United States Supreme Court and Courts of Appeal up to the present.

ECF No. 6-1 at 30 (emphasis added).

In seeking this relief, Plaintiffs essentially re-write the Anti-Discrimination Condition that they wish the Court to strike down, implying that OJP has conditioned the award funds on extraneous policy and guidance documents that are nowhere mentioned in Plaintiffs' award package. Nothing in those materials confirms Plaintiffs' speculation that DOJ intends to enforce the Anti-Discrimination Condition in ways that go beyond

---

[2] Plaintiffs' complaint also challenged certain language in the NOFO related to federal immigration enforcement and compliance. The parties have since stipulated that the challenged immigration language is not a term or condition of Plaintiffs' awards, and Plaintiffs have agreed not to pursue their claims arising from the NOFO's challenged immigration language. *See generally* ECF No. 12. Defendants therefore do not address that issue in this Opposition.

established nondiscrimination law. And indeed, Plaintiffs essentially concede that DOJ has authority to require them to certify their compliance with "the current meanings of lawful DEI programs and anti-discrimination provisions as those have been interpreted by the United States Supreme Court and Courts of Appeal up to the present." The Anti-Discrimination does just that.

Thus, as explained more fully below, Plaintiffs' challenge to the Anti-Discrimination Condition is without basis in law, and their motion for a preliminary injunction should be denied.

## III.    LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008). A stay "is not a matter of right, even if irreparable injury might otherwise result" but rather an exercise of judicial discretion that depends on the particular circumstances of the case. *Nken v. Holder*, 556 U.S. 418, 433 (2009) (citation omitted). To justify an injunction, a movant must establish that: (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at 20.

Preliminary relief is meant to preserve the status quo pending final judgment. *Sierra On-Line, Inc. v. Phoenix Software, Inc.,* 739 F.2d 1415, 1422 (9th Cir. 1984). When preliminary relief would change the status quo and "order[] a responsible party to take action," it is "particularly disfavored." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (citations omitted). In such cases, the moving party "must establish that the law and facts *clearly favor* [its] position, not simply that [it] is likely to succeed." *Garcia v. Google, Inc.,* 786 F.3d 733, 740 (9th Cir. 2015) (emphasis original).

Here, these factors weigh against Plaintiffs' motion.

## IV.    ARGUMENT

### A.    Plaintiffs Are Unlikely to Succeed on the Merits of Their Claims

#### 1.    The Anti-Discrimination Condition is authorized by statute and is constitutional.

OJP requires recipients of grant funding to certify their compliance with federal nondiscrimination law and agree that their compliance is material to the government's payment decisions for purposes of the False Claims Act. These conditions are neither novel nor unlawful: by calling attention to recipients' pre-existing obligation to comply with the law, OJP is not imposing any new obligations on recipients.

Under Title VI of the Civil Rights Act of 1964, recipients of federal assistance must comply with federal nondiscrimination law. *See* 42 U.S.C. § 2000d. Title VI further "authorize[s] and direct[s]" federal agencies that award federal funds to effectuate section 2000d by issuing rules and regulations. *Id.* § 2000d-1. Pursuant to that authority, DOJ, as a federal agency, and OJP, as a component of DOJ, are required to ensure that all grant awards comply with federal law. Specifically, OJP must administer federal awards in a manner that ensures "that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations." 2 C.F.R. § 200.300(a); *see also* 2 C.F.R. § 200.211(c)(1)(ii); 2 C.F.R. § 200.303(b). All relevant requirements must then be communicated to recipients and subrecipients and incorporated into the awards directly or by reference in the terms and conditions of the federal award. *Id. See also Guardians Ass'n v. Civil Serv. Comm'n*, 463 U.S. 582, 629–30 (1983) (Marshall, J., dissenting) (explaining that "[e]very application for Federal financial assistance must, 'as a *condition* to its approval and the extension of any Federal financial assistance,' contain assurances that the program will comply with Title VI and with all requirements imposed pursuant to the executive regulations issued under Title VI") (citing regulations of various federal departments and agencies, including DOJ) (emphasis in original, internal quotation marks omitted).

That is what OJP did here. It provided the terms and conditions required for the awards and specifically told recipients of those awards that they must certify that they do "not operate any program (including any such programs having components relating to diversity, equity, and inclusion) that violates any applicable Federal civil rights or nondiscrimination laws." By requiring grant recipients to certify their compliance with federal nondiscrimination law, the federal government calls recipients' attention to those obligations and makes them certify that they understand and have accepted those obligations. Recipients' "assurances" of compliance are "given 'in consideration of' federal aid, and the federal government extends assistance 'in reliance on' the assurance of compliance." *Guardians*, 463 U.S. at 630 (Marshall J., dissenting) (citation omitted).

Such certifications can thus be relevant to claims under the False Claims Act, which imposes civil liability on persons who knowingly make false statements "material to a false or fraudulent claim" for payment from the government. 31 U.S.C. § 3729(a). A false certification of compliance with civil rights laws would be a false statement, and in the grants at issue here, OJP has informed recipients that their "compliance in all respects with all applicable Federal civil rights and nondiscrimination laws is material to the government's payment decisions." ECF No. 6-5 at 15–16. The government thus puts recipients on notice that their compliance with those obligations is material, i.e., that it is "capable of influencing" the government's payment decision. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 193 (2016).

Providing such notice, and asking recipients to acknowledge it, is similarly unremarkable and adds nothing to recipients' obligations. Plaintiffs have routinely certified compliance with federal nondiscrimination laws as a condition of federal funding in the past, and they have also previously affirmed their awareness that making a false certification regarding compliance could subject recipients to criminal prosecution, civil penalties, or administrative remedies for false claims. Henneberg Decl. ¶ 15. While they are now being asked to certify specifically that any DEI programs they operate comply with federal nondiscrimination law, plaintiffs cannot plausibly argue that the more specific certification

is impermissible given that it is subsumed within the broader certification that prohibits funding recipients from operating *any* programs that violate federal nondiscrimination law.

Plaintiffs nevertheless speculate that the Anti-Discrimination Condition is meant to force them to disavow participation in *lawful* DEI programs. ECF No. 6-1 at 13. But nothing in the plain text of the provision suggests that meaning, and OJP confirms that the Anti-Discrimination Condition should not be read to target programs that lawfully promote or advance diversity, equity, or inclusion while remaining compliant with federal nondiscrimination laws. Henneberg Decl. ¶ 16. Plaintiffs base their contention not on the term itself but on extraneous policy statements and guidance (i.e, the Attorney General's memorandum, presidential Executive Orders) that are not included in the grant conditions. Notably, the Fourth Circuit recently rejected a First Amendment challenge to a similar provision that merely "requires compliance with existing federal laws" that the plaintiffs had not challenged. According to the court:

> What plaintiffs are really asking us to do is read subtext into the Provision's text. And what they're really challenging is how the Administration and its agency actors interpret antidiscrimination law in relation to plaintiffs' DEI programming. Neither is fertile ground for a facial attack against the Certification Provision. Instead, we're bound by the text. If the President, his subordinates, or another grantor misinterprets federal antidiscrimination law, plaintiffs "can challenge that interpretation in a specific enforcement action." But we can't conclude today that a "substantial number of the [Certification Provision's] applications" will be unconstitutional.

*Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 167 F.4th 86, 104 (4th Cir. 2026).

So too here. To the extent Plaintiffs worry that DOJ may try to enforce the Anti-Discrimination Condition in a legally unfounded way, such speculation cannot justify facial invalidation. *See Bldg. & Const. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002) ("The mere possibility that some agency might make a legally suspect decision to award a contract or to deny funding for a project does not justify an injunction against enforcement of a policy that . . . is above suspicion in the ordinary course of

administration.") (citation omitted). Plaintiffs cannot ask the Court to assume in advance that OJP will adopt unlawful interpretations of existing laws and ordinary contractual language. In fact, in this posture, the Court is required to assume the opposite.

Accordingly, another district court in this circuit denied a similar challenge to a certification provision referencing DEI, finding that the plaintiffs had "not demonstrated that they [are] likely to succeed in their challenge to the Certification Provision because they have not shown at this juncture that the provision goes beyond targeting DEI programs that violate federal antidiscrimination law." *San Francisco A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184, 1200, 1221–22 (N.D. Cal. 2025), *appeal filed* No. 25-4988 (9th Cir. 2025).

The same result should obtain here. The Anti-Discrimination Condition simply requires recipients to certify their compliance with existing law. Plaintiffs are not being asked to sign onto the Administration's policy preferences, or even the Administration's views about the proper interpretation of federal nondiscrimination laws. Rather, the condition asks Plaintiffs to certify that they will not violate the laws currently in place. That requirement is well within OJP's authority in administering the ICAC grant.

### 2. Plaintiffs' constitutional and statutory challenges fail.

#### a. The Anti-Discrimination Condition does not violate the separation of powers.

Plaintiffs argue that the Anti-Discrimination Condition is unconstitutional because it violates the separation of powers. ECF No. 6-1 at 18–20. But the crux of Plaintiffs' separation-of-powers argument is that DOJ has exceeded the authority Congress delegated to it under a federal *statute*. *Id.* at 9–12. This makes Plaintiffs' claim—and alleged injury—statutory, not constitutional. This Court's review is therefore limited by the applicable statutes governing judicial review of an allegedly *ultra vires* agency action.

Indeed, the Supreme Court's decision in *Dalton v. Specter*, 511 U.S. 462 (1994), forecloses Plaintiffs' ability to broadly nullify agency action by raising statutory arguments with constitutional dressing. There, the Court reversed a federal circuit court that had

"reasoned, relying primarily on" *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), "that whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine." *Id.* at 471. The Court stated this reasoning was incorrect because the Supreme Court's "cases do not support the proposition that every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id.* at 472. Instead, the Court "often distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.* Therefore, "claims simply alleging that the President [or an executive officer] has exceeded his statutory authority are not 'constitutional' claims[.]" *Id.* at 473. Moreover, the "fundamental and longstanding principle of judicial restraint" counsels courts to "avoid reaching constitutional questions in advance of the necessity of deciding them." *Al Otro Lado v. Exec. Office for Immigration Review*, 138 F.4th 1102, 1123 (9th Cir. 2025) (citation omitted). The Court should thus decline Plaintiffs' invitation to constitutionalize their statutory claim and alleged injury. *See New York v. Nat'l Sci. Found.*, 793 F. Supp. 3d 562, 604 (S.D.N.Y. 2025) (challenge to directives and grants was statutory, not constitutional, under *Dalton*).

In any event, OJP fully complied with the relevant governing statutes. As explained above, OJP is required to ensure that recipients comply with nondiscrimination law. *See* 42 U.S.C. § 2000d; 2 C.F.R. § 200.300(a); 2 C.F.R. § 200.211(c)(1)(ii); 2 C.F.R. § 200.303(b). That Congress did not specifically spell out that OJP must enforce nondiscrimination laws in each statute governing the ICAC program does not remove OJP's authority—and obligation—to ensure that recipients follow those laws. Moreover, Plaintiffs are simply mistaken in their claim that the statutory authority for ICAC grants is the PROTECT Our Children Act of 2008, and that OJP's ability to impose funding conditions on ICAC grants is limited to the set of funding factors listed in that statute. Rather, the operative statute contains no such factors and merely allocates funds "for missing and exploited children programs, including as authorized by sections 404(b) and 405(a) of the 1974 Act (except that section 102(b)(4)(B) of the PROTECT Our Children Act of 2008 (Public Law 110–

401) shall not apply." Nothing in the law restricts the agency's customary discretion to impose funding conditions that ensure grant awardees under this provision are otherwise compliant with federal law. There is thus no basis for a separation-of-powers violation here.

### b. The Anti-Discrimination Condition does not violate the Spending Clause.

Plaintiffs further argue that the Anti-Discrimination Condition is unlawful under the Constitution's Spending Clause. ECF No. 6-1 at 20–25. The Spending Clause provides that Congress has the power "to pay the Debts and provide for the common Defence and general Welfare of the United States." U.S. Const. art. I, § 8, cl. 1. This power gives Congress the ability "to grant federal funds to the States," and to "condition such a grant upon the States' 'taking certain actions that Congress could not require them to take.'" *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 576 (2012) ("*Sebelius*") (quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 686 (1999)). To qualify as a valid exercise of the spending power, such congressionally created conditions on grants must be (1) unambiguous, (2) not overly coercive, and (3) related to the federal interest in particular national projects or programs. *See City of Los Angeles*, 929 F. 3d at 1174–75 (setting forth criteria).

Here, Plaintiffs' Spending Clause challenge is misplaced. The Ninth Circuit held in *City of Los Angeles* that "the applicable Spending Clause principles do not readily apply to an allocation of grant funds through a competitive grant process[.]" 929 F. 3d at 1175. Similarly, the elements of a Spending Clause violation do not apply to the Anti-Discrimination Condition contained in the grant packages here:

*First*, the condition is not ambiguous, nor do Plaintiffs lack notice of its existence. To comply with the clear notice requirement of Spending Clause jurisprudence, Congress must only make clear that acceptance of federal funds obligates States to comply with a condition. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 18 (1981). The Ninth Circuit has recognized that this threshold is met when "*the statute's intention to impose a condition* is expressed clearly," even though the operation of a funding condition "is

perhaps unpredictable." *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002) (emphasis in original). There is no requirement to "list every factual instance in which a [funding recipient] will fail to comply with a condition" because requiring "[s]uch specificity would prove too onerous, and perhaps, impossible." *Id.* Nor are Plaintiffs being surprised with an impermissible "post acceptance" or "retroactive" restriction on their use of the award. *City of Los Angeles*, 929 F. 3d at 1175. Rather, the inclusion of the Anti-Discrimination Condition in the grant offer "enable[s] the [plaintiffs] to exercise their choice knowingly, cognizant of the consequences of their participation." *Id.* at 1174 (quoting *South Dakota v. Dole*, 483 U.S. 203, 207 (1987), and *Pennhurst*, 451 U.S. at 17).

*Second*, the Anti-Discrimination Condition is not "so coercive as to pass the point at which pressure turns into compulsion." *City of Los Angeles*, 929 F.3d at 1175 (quoting *Dole*, 483 U.S. at 211). In *Dole*, Congress attempted to induce states to adopt a minimum drinking age of twenty-one years by threatening to cut five percent of federal highway funding to those states that failed to do so. *Id.* at 211. The Court held this was only "relatively mild encouragement to the States," and therefore "a valid use of the spending power." *Id.* at 211–12. By contrast, the threat to eliminate *all* of a state's existing Medicaid funding if the state opted out of the Affordable Care Act's expansion in health care coverage was "much more than 'relatively mild encouragement'—it [was] a gun to the head," and therefore was an impermissible use of Congress's spending power. *Sebelius*, 567 U.S. at 581. Accordingly, Congress may offer conditional funding only if the "State has a legitimate choice whether to accept the federal conditions in exchange for federal funds." *Id.* at 578. Here, the ICAC grant funds here bear much greater resemblance to the highway appropriations in *Dole* than to the entire sum of a state's Medicaid funding as in *Sebelius*. As the Ninth Circuit reasoned in upholding a grant condition in *City of Los Angeles*, "DOJ does not propose to withdraw significant federal funds from a state or local jurisdiction unless they comply with specified federal requirements." 929 F.3d at 1175–76. Rather, Plaintiffs have a legitimate choice whether to accept the clearly delineated conditions on ICAC awards in exchange for limited

ICAC funds—as they have done without complaint through previous funding cycles. And contrary to Plaintiffs' implications, nothing in the plain text of the Anti-Discrimination Condition coerces Plaintiffs to disavow lawful DEI programming or agree with "the Administration's viewpoints" regarding DEI. ECF No. 6-1 at 24; *see also* Henneberg Decl. ¶ 16. There is no impermissible coercion here.

*Third*, a requirement that grant recipients comply with federal anti-discrimination law "is in pursuit of the general welfare, and meets the low bar of being germane to the federal interest" in combating unlawful discrimination. *City of Los Angeles*, 929 F.3d at 1176. The Supreme Court "has never struck down a condition on federal grants based on th[e] relatedness prong." *Id.* at 1175. The Court should decline Plaintiffs' invitation to do so here.

Plaintiffs are thus unlikely to succeed on their claim that the Anti-Discrimination Condition violates the Spending Clause.

### c. The Anti-Discrimination Condition does not violate the Fifth Amendment.

In their complaint, Plaintiffs argue that the Anti-Discrimination Condition is so vague as to violate the Fifth Amendment's requirement that a law must provide fair notice of what conduct it prohibits. ECF No. 1 at 28–30. But Plaintiffs' preliminary injunction motion does not make this argument with respect to the Anti-Discrimination Condition—rather, it references only the "Immigration Condition." ECF No. 6-1 at 2, 25. As Plaintiffs have failed to offer any meaningful argument in their motion that the Anti-Discrimination Condition offends the Fifth Amendment on vagueness grounds, the Court should reject any implicit request to enjoin the condition on that basis.

On the other hand, Plaintiffs devote two sentences in their motion to the argument that both "Challenged Conditions" violate the Fifth Amendment's guarantee of "procedural due process." ECF No. 6-1 at 26. But this claim appears nowhere in Plaintiffs' Complaint, where their Fifth Amendment cause of action is expressly based on "Unconstitutional Vagueness." ECF No. 1 at 28–30.  Plaintiffs have thus not provided proper notice of a

procedural due process claim in their pleading and cannot seek a preliminary injunction on that basis.

### d. The Anti-Discrimination Condition does not violate the APA.

Plaintiffs are also unlikely to prevail on their APA claim that the Anti-Discrimination Condition is contrary to law or arbitrary and capricious. As explained above, OJP is required by Title VI to ensure that recipients of ICAC awards abide by federal nondiscrimination laws. Its methods for doing so—i.e., expressly including straightforward certifications of compliance within its grant awards—are decisions "committed to agency discretion by law," for which the APA does not provide an avenue for review. 5 U.S.C. § 701(a)(2). An agency's determination of how best to condition appropriated funds to fulfill its legal mandates is classic discretionary agency action. *See Lincoln v. Vigil*, 508 U.S. 182, 193 (1993). In *Lincoln*, the Supreme Court held that the Indian Health Service's decision to discontinue a program it had previously funded and to instead reallocate those funds to other programs was not reviewable under the APA. 508 U.S. at 185–88, 193. The Court explained that the "allocation of funds from a lump-sum appropriation" is an "administrative decision traditionally regarded as committed to agency discretion," because its purpose is to allow the agency "to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Id.* at 192. The decision "requires a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise," including "whether its resources are best spent on one program or another," and "whether a particular program best fits the agency's overall policies." *Id.* at 193 (citation omitted). Of course, "Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes." *Id.* But as long as the agency abides by the relevant statutes (and whatever self-imposed obligations may arise from regulations or grant instruments), the APA "gives the courts no leave to intrude" via arbitrary-and-capricious review. *Id.*

Even if this Court finds that the Anti-Discrimination Condition is subject to the arbitrary-and-capricious standard, that level of review "is deferential, and a court may not

*Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction*    14    26-cv-00615-CAB-VET

substitute its own policy judgment for that of the agency." *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). Arbitrary-and-capricious review is "narrow." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983). All that is required is for the agency to "act[] within a zone of reasonableness." *Prometheus,* 592 U.S. at 423; *City of Los Angeles,* 929 F.3d at 1181 ("The agency need provide only a minimal level of analysis to avoid its action being deemed arbitrary and capricious") (internal quotation marks omitted). Here, given the agency's discretion to impose appropriate terms and conditions on the receipt of federal funds, and general grantmaking requirements that the recipients of such funds follow federal law, the adoption of grant conditions that require recipients to certify their compliance with federal nondiscrimination laws can hardly be considered arbitrary or capricious. *See id.* at 1182 (rejecting APA arbitrary and capricious challenge to COPS grant programs and holding that "the wisdom of DOJ's policy is not an element of our arbitrary and capricious review"). And although conditions addressing nondiscrimination requirements may have been worded somewhat differently in the past, the Anti-Discrimination Condition does not constitute a radical change in conditions applicable to DOJ grants. As discussed above, the Anti-Discrimination Condition simply requires Plaintiffs to certify compliance with otherwise applicable law.

## B. Plaintiffs Will Not Suffer Irreparable Harm in the Absence of Immediate Relief

Plaintiffs seeking the extraordinary remedy of a preliminary injunction must "demonstrate that irreparable injury is likely in the absence of an injunction." *Winter,* 555 U.S. at 22 (citation omitted). The "possibility" of such harm is insufficient, *id.,* as is "speculative injury," *id.* at 21; Plaintiffs must show both immediacy and likelihood that they will be irreparably harmed absent emergency relief. *See Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir 1988).

Plaintiffs fail to make that showing here. "[I]f a party objects to a condition on the receipt of federal funding, its recourse is to decline the funds." *Agency for Int'l Dev. v. All.*

*For Open Soc'y Int'l, Inc.,* 570 U.S. 205, 214 (2013). And if a party makes the voluntary choice to forego those funds, any resulting economic harm cannot constitute an irreparable injury attributable to the federal government. Alternatively, Plaintiffs could accept the Anti-Discrimination Condition. Plaintiffs make no showing that the acceptance of a term they consider to be "unlawful"—but that merely requires them to comply with otherwise applicable federal law—imposes any concrete, imminent harm necessitating preliminary relief while this litigation plays out.

Plaintiffs also erroneously assert that they face *per se* irreparable harm from "the deprivation of constitutional rights." ECF No. 1 at 17. But as explained above, even if Plaintiffs were correct on the merits of their statutory arguments, that would not mean that they suffered a constitutional injury. *See Dalton*, 511 U.S. at 473–74 ("[C]laims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims.").

Plaintiffs thus fail to establish that they would be irreparably harmed in the absence of preliminary relief.

### C.    The Balance of Equities Weighs in the Government's Favor

Plaintiffs must also demonstrate that "the balance of equities tips in [their] favor" and "an injunction is in the public interest." *Winter,* 555 U.S. at 20 (citation omitted). These "factors merge when the Government is the opposing party." *Nken,* 556 U.S. at 435.

In asserting that the public interest weighs in their favor, Plaintiffs mostly repackage their arguments on the merits, arguing that OJP's imposition of "unlawful" conditions cannot be in the public interest. But those arguments fail for the reasons outlined above. Plaintiffs also argue that "[t]he public interest is served by preserving Plaintiffs' ability to continue to operate their regional task forces that strive to protect children from internet predators." ECF No. 6-1 at 29. While this is certainly a laudable goal, Plaintiffs fail to provide facts regarding whether their past allocations of ICAC funds are still available to them and how long they can continue fulfilling various ICAC operations while this litigation plays out.

On the other hand, a preliminary injunction risks irreparable harm to the government and to the public interest by requiring the payment of money that the government may never recover, even if it is ultimately decided that the Anti-Discrimination Condition is lawful and Plaintiffs still refuse to certify it. The Supreme Court has cited this risk to the public fisc in staying injunctions granted by district courts. *See Dep't of Educ. v. California*, 604 U.S. 650, 652 (2025) (per curiam). And this factor should "inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle,* 145 S. Ct. 2653, 2654 (2025). Moreover, a preliminary injunction would impede the government's ability to carry out DOJ grantmaking and would frustrate the government's strong interest in uniformly ensuring that recipients of federal funds comply with applicable federal laws.

Therefore, the balance of the equities and public interest favor denying Plaintiffs' request for relief.

## D.    Any Injunctive Relief Should be Accompanied by a Bond

Should the Court grant Plaintiffs' motion, in whole or in part, any preliminary injunction should also be accompanied by a bond pursuant to Federal Rule of Civil Procedure 65(c). As the Court of Appeals for the D.C. Circuit recently clarified, "injunction bonds are generally required." *Nat'l Treasury Emps. Union v. Trump*, No. 25-5157, 2025 WL 1441563, at *3 n.4 (D.C. Cir. May 16, 2025) (per curiam). The Court has broad discretion to determine the amount of an appropriate bond. If the Court were to enter an injunction, Defendants ask that the bond amount reflect the cost and disruption to the DOJ's administration of the grants at issue in this proceeding resulting from Plaintiffs' requested relief.

/ / /

/ / /

/ / /

## V.   CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for a preliminary injunction.

DATED: March 23, 2026

Respectfully submitted,

ADAM GORDON
United States Attorney

*s/ Betsey Boutelle*
BETSEY BOUTELLE
Assistant U.S. Attorney

Attorneys for Defendants