ADAM GORDON
United States Attorney
BETSEY BOUTELLE
Assistant U.S. Attorney
California Bar No. 299754
United States Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: (619) 546-8764/7632
Facsimile: (619) 546-7751
Email: betsey.boutelle@usdoj.gov

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF SAN DIEGO, CITY OF SAN JOSE, | Case No.: 26-cv-615-CAB-VET |
| Plaintiffs, | **DECLARATION OF MAUREEN A. HENNEBERG IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| U.S. DEPARTMENT OF JUSTICE, et al., | |
| Defendants. | |

I, Maureen A. Henneberg, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following statements are true and correct, to the best of my knowledge, information, and belief:

1. I am the Deputy Assistant Attorney General for Operations and Management for the Office of Justice Programs within the United States Department of Justice at Washington, D.C. I have served the Office of Justice Programs (OJP) in this role since February 2015, having served in the role in an acting capacity during the year preceding then. In this position, I advise the agency on management and operational issues and oversee the work of all OJP business offices, including the Office of the Chief Financial Officer; the Office of Administration; the Office of Audit, Assessment, and Management; the Office of the Chief Information Officer; the Office of Communications; and the Office of Equal Employment Opportunity. Additionally, since January 20, 2025, I have been the "Supervisory Official" over OJP, with the authority to perform all the functions of the Assistant Attorney General for OJP, except those that are required, by statute or regulation, to be performed personally by that officer. In this latter capacity, I work closely with Department leadership—*i.e.*, with Administration officials in its leadership offices (the Office of the Attorney General, the Office of the Deputy Attorney General, and the Office of the Associate Attorney General)—from whom I receive policy guidance and supervision, which I communicate to, and implement within, OJP.

2. This declaration is based on my personal knowledge and information made available to me in the course of performing my official duties.

3. The purpose of this declaration is to provide information in Opposition to Plaintiffs' Motion for Preliminary Injunction.

4. Among OJP's principal functions are making, administering, and closing out grant awards. It is the largest grantmaking component of DOJ, and it, among other ways, advances DOJ's mission in part by making thousands of discretionary, competitive grant awards to state, local and tribal agencies, as well as to community-based and other non-governmental entities.

5. In making discretionary grant awards—*i.e.*, those where the scope, format, and eligible recipients are not prescribed by statute—OJP exercises its discretion, consistent with applicable law, based on agency and Administration priorities. OJP generally exercises that discretion, in part, through a competitive application process.

6. The Internet Crimes Against Children (ICAC) Task Force program was developed in 1998, in response to an ever-increasing number of children and teenagers using the Internet, an ever-increasing number of online images depicting child sexual abuse, and an ever-increasing amount of online activity by people seeking to contact and exploit children and teens. The program is a multinational and multijurisdictional network of 61 ICAC task forces—consisting of nearly 5,500 federal, state, local, and tribal law enforcement and prosecutorial agencies—throughout the United States.

7. ICAC funding helps law enforcement agencies develop an effective response to technology-facilitated child sexual exploitation and Internet crimes against children. This assistance encompasses forensic and investigative components, training and technical assistance, victim services, and community education.

8. I am familiar with the statutory authority for funding decisions regarding OJP's ICAC grants. In paragraphs 24-30 of Plaintiffs' Complaint, they assert that the PROTECT Our Children Act of 2008, codified at 34 USC §§ 21112, 21116, and 21117, provides the statutory authority for the Fiscal Year (FY) 2025 ICAC awards, and that said Act controls the specific purposes and allowable uses of funds and constrains DOJ discretion. That is incorrect. Instead, as indicated by the award documents included with the Complaint, the Notice of Funding Opportunity (Complaint Ex. A) and the Award Packages (Complaint Exs. B & E) provide the correct statutory authority for the awards, which is an annual appropriations act enacted by Congress: the Full-Year Continuing Appropriations Act, 2025 (P.L. 119-4, 139 Stat. 9, 40; see Pub. L. No. 118-42, 138 Stat. 25, 150). The Full-Year Continuing Appropriations Act, 2025, is the sole authority for the FY 2025 ICAC awards at issue in this lawsuit.

9.      The Full-Year Continuing Appropriations Act, 2025, made funds available under applicable authorities enacted in Pub. L. No. 118-42, the Commerce, Justice, State, and Related Agencies Appropriations Act, 2024. Specifically, the pertinent appropriations statutory provision in that law made funding available "for missing and exploited children programs, including as authorized by sections 404(b) and 405(a) of the 1974 Act (except that section 102(b)(4)(B) of the PROTECT Our Children Act of 2008 (Public Law 110–401) shall not apply for purposes of this Act)."

10.     The ICAC Task Force awards are discretionary awards, though the amounts of each award are determined using an administrative formula. Because ICAC Task Force funds are not authorized pursuant to the PROTECT Our Children Act of 2008, OJP is not required to use the formula found in 34 USC § 21116(a)(2) when determining individual ICAC task force funding levels, although OJP has, within its discretion, elected to determine award amounts that align with the variables provided in the PROTECT Our Children Act of 2008.

11.     The authority for OJP to impose grant conditions ordinarily derives from OJP's authority to execute, administer, and manage a given grant program. Moreover, such authority encompasses the requirement that, as the federal awarding agency administering the grant program, it must ensure it alerts the prospective recipient to – and obtains its agreement to – the requirements that will apply to it under the grant award.

12.     After an applicant is selected to receive grant funding, OJP sends the applicant an award offer that includes award details, such as the award amount and period of performance, and the award conditions. An award is not "active" until the applicant (the prospective recipient) formally accepts the award offer (by executing the award agreement), to become the grant award recipient. All OJP grant awards contain an award condition that expressly incorporates and applies (as award requirements) pertinent DOJ federal grants administrative regulations.

13.     In November 2025, OJP issued the Notice of Funding Opportunity ("NOFO") for the FY25 ICAC Task Force Program, soliciting applications for ICAC Task Force grant

3

awards. The NOFO contains a section titled "Unallowable Uses of Funds," specifying certain programs and/or activities that are "out of the program scope and will not be funded." These include, *inter alia*, "any program or activity" that "directly or indirectly []violates . . . federal immigration law," or "impedes or hinders the enforcement of federal immigration law." However, neither the NOFO "Unallowable Uses of Funds" section nor its contents constitute a term or condition of ICAC recipients' awards or award offers. An ICAC recipient's acceptance of its award offer is not understood by OJP to constitute acceptance of, agreement to, or certification of compliance with the guidance set forth in the NOFO "Unallowable Uses of Funds" section, including the text in Paragraph 1 of the section, that Plaintiffs challenge as the "Immigration Condition" in this lawsuit.

14.    The City of San Diego and the City of San Jose each submitted their applications for funding for ICAC Task Force grants in December 2025. In December 2025, OJP approved the cities' respective ICAC grant applications and sent each city its award offer. Included among the award conditions in each city's award offer, which each city must accept to receive its grant award, is award condition number 4, the "Anti-Discrimination Condition," which I understand to be at issue in this lawsuit.  This award condition provides as follows:

> The recipient agrees that its compliance with all applicable Federal civil rights and nondiscrimination laws is material to the government's decision to make this award and any payment thereunder, including for purposes of the False Claims Act (31 U.S.C. 3729-3730 and 3801-3812), and, by accepting this award, certifies that it does not operate any programs (including any such programs having components relating to diversity, equity, and inclusion) that violate any applicable Federal civil rights or nondiscrimination laws.

15.    The Anti-Discrimination Condition merely requires the recipient, by accepting its award (and receiving federal funds), to certify that it adheres to applicable federal civil rights and nondiscrimination laws and does not violate these laws under programs it operates. As recipients of prior awards, each Plaintiff has certified to, under penalty of perjury, the "U.S. Department of Justice Certified Standard Assurances," which similarly provides as follows:

4

> The Applicant understands that the federal statutes and regulations applicable to the award (if any) made by the Department based on the application specifically include statutes and regulations pertaining to civil rights and nondiscrimination, and, in addition....
>
> I acknowledge that a materially false, fictitious, or fraudulent statement (or concealment or omission of a material fact) in this certification, or in the application that it supports, may be the subject of criminal prosecution (including under 18 U.S.C. §§ 1001 and/or 1621, and/or 34 U.S.C. §§ 10271-10273), and also may subject me and the Applicant to civil penalties and administrative remedies for false claims or otherwise (including under 31 U.S.C. §§ 3729-3730 and 3801-3812).

16.   OJP does not understand the Anti-Discrimination Condition in this case to signify that any or all state or local programs ostensibly promoting or advancing "diversity, equity, and inclusion" necessarily violate federal civil rights or nondiscrimination laws. Nor does OJP understand the Anti-Discrimination Condition to prohibit ICAC program grant recipients from operating any programs that ostensibly promote or advance "diversity, equity, and inclusion"—so long as such programs are lawful under applicable federal civil rights and nondiscrimination laws, as stated in such Condition.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed March 22, 2026.

_____
Maureen A. Henneberg
Deputy Assistant Attorney General for
Operations and Management
Office of Justice Programs