HEATHER FERBERT, City Attorney
JEAN JORDAN, Assistant City Attorney
JULIE RAU, Lead Deputy City Attorney
California State Bar No. 317658
NEAL A. MARKOWITZ, Deputy City Attorney
California State Bar No. 201692
JENNIFER M. MARTIN, Deputy City Attorney
California State Bar No. 322048
    Office of the City Attorney
    1200 Third Avenue, Suite 1100
    San Diego, California 92101-4100
    Telephone:  (619) 533-5800
    Facsimile:   (619) 533-5856
    E-Mail: Jrau@sandiego.gov
            NMarkowitz@sandiego.gov
            MartinJM@sandiego.gov

Attorneys for Plaintiff, CITY OF SAN DIEGO

*[additional counsel on signature page]*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF SAN DIEGO and CITY OF SAN JOSE,<br><br>        Plaintiffs,<br><br>        v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE; PAMELA J. BONDI, in her official capacity; OFFICE OF JUSTICE PROGRAMS; MAUREEN A. HENNEBERG, in her official capacity, OFFICE OF JUVENILE JUSTICE AND DELINQUENCY PREVENTION; EILEEN M. GARRY, in her official capacity,<br><br>        Defendants. | Case No. 26-cv-615-CAB-VET<br><br>**REPLY IN SUPPORT OF PLAINTIFFS CITY OF SAN DIEGO AND CITY OF SAN JOSE'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge:  Hon. Cathy Ann Bencivengo<br>Court Room:  15A (15th Flr)<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

REPLY ISO OF PLTFS' PRELIMINARY INJUNCTION

## I.    INTRODUCTION

On July 29, 2025, Attorney General Bondi issued a memorandum to every recipient of federal funding redefining what federal nondiscrimination law requires. That memorandum characterizes as unlawful a range of diversity practices that no court has ever held to be illegal—including the use of facially neutral hiring criteria, training programs supporting historically marginalized groups, and policies promoting diversity in candidate pools. It has never been rescinded, modified, or repudiated.

Months later, the Office of Justice Programs (OJP) issued Internet Crimes Against Children (ICAC) grant awards requiring Plaintiffs to certify—under penalty of False Claims Act (FCA) treble damages—that they "do not operate any programs (including any such programs having components relating to diversity, equity, and inclusion) that violate any applicable Federal civil rights or nondiscrimination laws." Plaintiffs now face a coerced choice: certify "compliance" with a standard that the Attorney General has officially redefined to contradict settled judicial precedent or forfeit hundreds of thousands of dollars in critical child-safety funding.

Defendants' opposition tells this Court that the Discrimination Condition "simply requires recipients to certify their compliance with existing law." Opp'n at 1. If that were true, Defendants would have no reason to oppose Plaintiffs' proposed injunction, which asks only that the condition be interpreted consistently with the law as written by Congress and interpreted by the Supreme Court and Courts of Appeal. Yet, Defendants oppose it.

Courts throughout the country have enjoined materially identical grant conditions for the same constitutional, statutory, and administrative reasons Plaintiffs have argued here. These decisions are correctly decided and chart the path for this Court. Defendants repeat arguments that these same courts have considered and consistently rejected. This Court should reach the same result.

1

PLTFS' MEMO. OF P&AS ISO PRELIMINARY INJUNCTION

## II.    ARGUMENT

### A. Plaintiffs Are Likely to Succeed on the Merits.

#### 1. The Discrimination Condition Means More Than the Opposition Represents.

The Discrimination Condition does not exist in a vacuum. Its meaning is shaped by the Executive Branch's official guidance to grant recipients about what federal nondiscrimination law requires—guidance that remains in effect and has never been rescinded, modified, or repudiated.

On July 29, 2025, Attorney General Bondi issued a memorandum titled "Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination." Martin Decl. Ex. F, ECF No. 6-2. The Memo does not merely restate existing law. It redefines it. The Memo asserts that practices and policies long understood to be lawful—including training programs, hiring policies designed to support historically marginalized groups, and the use of facially neutral criteria such as "cultural competence" and "lived experience"—violate federal nondiscrimination law when they function as proxies for protected characteristics. *Id*. at 5.

The Bondi Memo further instructs that funding recipients "should affirm sex-based boundaries rooted in biological differences," contrary to the Supreme Court's holding in *Bostock v. Clayton County*, 590 U.S. 644, 662, 670 (2020), extending Title VII sex-based protections to transgender individuals. Martin Decl. Ex. F at 6, ECF No. 6-2. And the Memo expressly threatens FCA enforcement against recipients whose policies are inconsistent with its guidance. Martin Decl. Ex. F at 8, ECF No. 6-2. The executive orders that preceded and prompted the Bondi Memo reinforce the same message. None has been withdrawn. Together with the Bondi Memo, they constitute the operative framework through which grant administrators will evaluate grantee "compliance." As multiple courts have observed, this guidance "repeatedly cast[s] [the Administration] as departing drastically from the practices of prior administrations." *Hous. Auth. of City & Cnty. of San Francisco v. Turner*, 2025 WL 3187761 at *12 (N.D. Cal. Nov. 14, 2025); *see Cnty. of Santa*

PLTFS' MEMO. OF P&AS ISO PRELIMINARY INJUNCTION

*Clara v. Noem*, 2025 WL 3251660 at * 34 (N.D. Cal. Nov. 21, 2025).

Defendants' response is to pretend the Bondi Memo does not exist. They characterize it and the executive orders as "extraneous policy statements and guidance . . . that are not included in the grant conditions" (Opp'n at 8) and insist that "[n]othing in the plain text of the provision" suggests the condition targets lawful Diversity, Equity, and Inclusion (DEI) programs. Opp'n at 8, citing Henneberg Decl. ¶ 16. To call it "extraneous" is like calling the speed limit "extraneous" to a traffic ticket.

Critically, neither the opposition nor the Henneberg Declaration identifies which interpretation of federal nondiscrimination law controls. The opposition states Plaintiffs are "not being asked to sign onto the Administration's . . . views about the proper interpretation of federal nondiscrimination laws." Opp'n at 9. But it never says what Plaintiffs are being asked to sign onto. It uses the phrase "the laws currently in place"—a formulation capacious enough to encompass either settled judicial interpretation or the Bondi Memo's contested redefinition.

The Henneberg Declaration suffers from the same deficiency. It does not state that "lawful" means lawful as determined by courts rather than the Attorney General.  It does not disavow that the Department of Justice will enforce the condition according to the Bondi Memo's interpretation.  More fundamentally, the Declaration is a litigation position crafted for this proceeding. It is not binding on OJP or the Attorney General and can be abandoned once this litigation concludes. Post-hoc, non-binding assurances cannot cure the condition's deficiencies.

If, as Defendants insist, Condition 4 merely restates existing obligations it is surplusage. But even Defendants admit the language is "updated." (Opp'n at 3:28.) Federal common law "presum[es] that every provision was intended to accomplish some purpose." *Chaly-Garcia v. United States*, 508 F.3d 1201, 1204 (9th Cir. 2007). The parenthetical singling out of DEI programs must therefore mean something broader than the standard compliance provisions already in the award.

PLTFS' MEMO. OF P&AS ISO PRELIMINARY INJUNCTION

If there were any remaining doubt that the condition is intended to reach beyond settled nondiscrimination law, Defendants' own conduct resolves it. Plaintiffs' proposed injunction asks this Court to require that the Discrimination Condition be interpreted as "encompassing the current meanings of lawful DEI programs and anti-discrimination provisions as those have been interpreted by the United States Supreme Court and Courts of Appeal up to the present." If, as Defendants insist, the condition already "does just that," Opp'n at 5, then the proposed injunction gives Defendants precisely what they say they want.

But Defendants oppose it. They describe the requested relief as seeking a "different version" of the condition. (Opp'n 1:18.) Their resistance to a court order requiring the very interpretation they profess to endorse is powerful evidence that the condition is intended to mean something broader. Plaintiffs' counsel has also proposed that the parties stipulate the condition be understood consistently with Supreme Court and Courts of Appeal precedent. Defendants have declined.

Where a party with enforcement authority declines to disavow enforcement of a challenged provision, such refusal constitutes strong evidence of a credible enforcement threat. *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021); *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 490 (9th Cir. 2024). Defendants could have confirmed the condition means what they tell this Court it means. They have not. The Court should draw the obvious inference.

### 2. The Challenged Condition Violates the Separation of Powers.
#### a. Plaintiffs' Claim Is Constitutional, Not Statutory, Under *Murphy Co. v. Biden*.

Defendants invoke *Dalton v. Specter*, 511 U.S. 462 (1994), but *Dalton* involved plaintiffs claiming the President violated a statute that actually granted him discretion. Here, Plaintiffs allege these statutes do not authorize the challenged condition—and that its imposition usurps a power the Constitution assigns exclusively to Congress. *In Murphy Co. v. Biden*, 65 F.4th 1122, 1130 (9th Cir. 2023), *cert. denied* 144 S. Ct. 1111 (2024), the Ninth Circuit held such a challenge

4

is "constitutional, and therefore justiciable." Courts in this Circuit have already rejected Defendants' exact *Dalton* argument. *See, e.g., Santa Clara*, 2025 WL 3251660, at *30.

**b.   The PROTECT Our Children Act and the Appropriations Act Both Constrain OJP's Authority.**

Defendants argue that the sole operative statutory authority for ICAC grants is the Full-Year Continuing Appropriations Acts, rather than the PROTECT Our Children Act, and that OJP is therefore unconstrained by the mission-focused formula and allowable use provisions of 34 U.S.C. § 21116. This argument is based on a misreading of both statutes.  The appropriations language cited in the NOFO, 138 Stat. 25, 150, explicitly provides funds for "the PROTECT Our Children Act of 2008 (Public Law 110–401)" which created the programmatic restraints for the ICAC program.  The appropriations act provides the funding; the PROTECT Our Children Act provides the substantive programmatic authority. The appropriation does not displace the authorizing statute. Defendants' argument that they have wholly unfettered discretion in conditioning these grants is meritless.

**c.   Title VI and the Uniform Guidance Do Not Authorize the Specific Condition at Issue.**

Defendants fall back on Title VI (42 U.S.C. § 2000d) and the Uniform Guidance (2 C.F.R. Part 200) as independent authority. Opp'n at 6. But Title VI not authorize agencies to invent new certification mechanisms that single out DEI programs by name and couple them with FCA materiality language, and redefine "compliance" by reference to the Administration's contested interpretation of what the law requires. *See City of Fresno v. Turner (Fresno II)*, 2025 WL 2721390 at *10 (N.D. Cal. Sept. 23, 2025).

**d.   The Challenged Condition Violates Spending Clause Constraints.**

Defendants argue that Spending Clause principles "do not readily apply" to the ICAC grants, citing *City of Los Angeles v. Barr*, 929 F.3d 1163, 1175 (9th Cir.

5

2019). Opp'n at 11. But the Ninth Circuit in *Barr* dealt with fund allocations, not required conditions, and itself found "no reason" that Spending Clause constraints would not apply to "agency-drawn conditions on grants." *Id.* at 1175 n.6. Moreover, the ICAC program is not a competitive grant.  Courts in this Circuit have recently applied Spending Clause principles in materially similar challenges. *See, e.g., Santa Clara*, 2025 WL 3251660, at *36.

### e.  The Condition Is Impermissibly Ambiguous.

The government's own position is the source of the ambiguity. The Bondi Memo tells grant recipients that nondiscrimination law means something fundamentally different from what courts have held. The litigation team tells this Court the condition requires nothing more than compliance with existing law—but then calls the proposed injunction requiring that interpretation a "different version" of the condition. Plaintiffs cannot know whether they are certifying compliance with the law as interpreted by courts or with the Executive Branch's new interpretation.

Requiring Plaintiffs to "comply with nondiscrimination law" is in this situation like telling a student to "answer the questions correctly"—a perfectly clear instruction, until the professor changes the answer key, refuses to say which version will be used for grading, and fails anyone who gets it wrong. The instructions haven't changed. But the standard against which compliance will be judged has been redefined in ways that contradict established judicial precedent—and no one in the Executive Branch will say which version of the standard controls.

Nor can the ambiguity be cured by post-hoc agency clarification. The purpose of the prohibition on ambiguity is to ensure that acceptance of conditions is knowing: "[T]here can, of course, be no knowing acceptance if a State . . . is unable to ascertain what is expected of it." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). Case-by-case clarification from the federal agency does not give Plaintiffs a reasonable opportunity to know what is prohibited at the juncture

6

of deciding whether to accept the conditions. *See Hous. Auth.*, 2025 WL 3187761, at *15 (rejecting case-by-case clarification as encouraging "arbitrary and discriminatory application").

### f. The FCA Materiality Provision Makes the Ambiguity Catastrophically Consequential.

The condition does not merely ask Plaintiffs to certify compliance. It makes that certification "material to the government's decision to make this award and any payment thereunder, including for purposes of the False Claims Act." Each violation of the FCA is punishable by mandatory treble damages plus civil penalties. 31 U.S.C. § 3729.  The FCA component is not ambiguous; its consequences are unambiguously alarming. *See Santa Clara*, 2025 WL 3251660, at *38 (noting ambiguities in the condition "particularly concerning" in light of the "well founded fear that the Department of Justice may use the [False Claims Act] as a weapon against grant recipients"). Coupling an ambiguous compliance standard with treble-damages exposure creates a deliberate chill that transforms a routine compliance certification into a coercive mechanism.

### g. The Challenged Condition Violates the Fifth Amendment.

Defendants argue that Plaintiffs' Fifth Amendment vagueness claim applies only to the Immigration Condition. Opp'n at 13. But the Discrimination Condition suffers from the same defects. By requiring compliance with undefined requirements in the context of the Bondi Memo's contradictory guidance, the condition contains "expansive, standardless language" that "creates huge potential for arbitrary and discriminatory enforcement." *Cnty. of Santa Clara,* 250 F. Supp. 3d 497, 534–35 (N.D. Cal. 2017).

### h. The Challenged Condition Violates the APA.

Defendants argue that OJP's conditioning of grant funds is "committed to agency discretion by law" under *Lincoln v. Vigil*, 508 U.S. 182 (1993). Opp'n at 14. But *Lincoln* involved the reallocation of funds between programs—a resource

7

prioritization decision. 508 U.S. at 185–88. It did not involve the imposition of conditions that raise independent constitutional concerns. The PROTECT Our Children Act provides meaningful standards against which to judge agency discretion. *See Santa Clara*, 2025 WL 3251660, at *41.

The Discrimination Condition does not derive from the PROTECT Our Children Act, which specifies that applicants must provide assurances "essential to ensure compliance with the requirements of this subchapter"—the ICAC statutory framework focused on child protection, not assurances related to the Administration's policy preferences regarding civil rights law. 34 U.S.C. § 21116(b)(2). Courts have repeatedly held that imposing grant conditions without statutory authority violates the APA. *See, e.g., Santa Clara*, 2025 WL 3251660 at *41–42; *Fresno II*, 2025 WL 2721390 at *10–12. Whether a task force's operating entity as a whole has diversity initiatives or DEI training programs has no bearing on its effectiveness in protecting children from internet predators.

Defendants insist the condition does not represent a "radical change." Opp'n at 15. The record demonstrates otherwise. Defendants have never before required ICAC grantees to certify that they do not operate an undefined unlawful DEI program under penalty of FCA liability. This is a new requirement imposed without reasoned explanation and without considering Plaintiffs' reliance interests or the impact on the child protection mission Congress intended. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515–16 (2009).

Defendants rely on *National Ass'n of Diversity Officers in Higher Education v. Trump*, 167 F.4th 86 (4th Cir. 2026). But *NADOHE* addressed only a facial challenge to executive orders and expressly invited the as-applied challenge Plaintiffs bring here. Nor did *NADOHE* address grant conditions coupled with explicit FCA materiality language. Rather, the Ninth Circuit has its own body of precedent taking a skeptical view of executive grant conditions imposed to advance policy objectives unrelated to the grant's purpose. *See City of Los Angeles v. Barr*,

PLTFS' MEMO. OF P&AS ISO PRELIMINARY INJUNCTION

941 F.3d 931 (9th Cir. 2019). And district courts within this Circuit have consistently declined to follow *NADOHE* when confronted with the specific contextual evidence present here. *See, e.g., Hous. Auth.*, 2025 WL 3187761, at *12, 14; *Fresno II*, 2025 WL 2721390, at *16–17, 19.

### i.    The Opposition Fails to Address the First Amendment Argument.

Plaintiffs argued that the condition invites First Amendment violations by requiring grantees to police their own and their partners' viewpoints on matters of public concern—including selecting law enforcement partners based on those partners' speech and positions on DEI. Mot. at 18, ECF No. 6-1. The opposition does not engage with this argument.  Nor does it address Plaintiffs' argument under *South Dakota v. Dole*, 483 U.S. 203, 210 (1987), that the spending power "may not be used to induce [grantees] to engage in activities that would themselves be unconstitutional."

### B. Plaintiffs Will Suffer Irreparable Harm Absent Preliminary Relief.

Defendants argue Plaintiffs can avoid harm by accepting the condition during litigation. Opp'n at 15–16. This argument is circular—it assumes the condition is lawful, which is the question being litigated. Accepting a certification whose meaning is contested and backed by treble damages is not a cost-free interim measure. Plaintiffs face three independently sufficient forms of irreparable harm: the deprivation of constitutional rights, *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017); the suspension of critical child protection work in cities facing significant budget shortfalls, Meaux Decl. ¶¶ 13–15; Shannon Decl. ¶ 4; and the coercive "Hobson's choice" between unconstitutional conditions and forfeiting funds, *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1057–59 (9th Cir. 2009).

/ / /

/ / /

PLTFS' MEMO. OF P&AS ISO PRELIMINARY INJUNCTION

### C. The Balance of Equities and Public Interest Favor Issuing the Injunction.

The public interest is served by preserving Plaintiffs' ability to continue operating their regional task forces. Defendants will not be harmed by an injunction prohibiting them from enforcing requirements that offend established constitutional principles. The government "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). "[T]he public interest cannot be disserved by an injunction that brings clarity to all parties and to citizens dependent on public services." *City & Cnty. of San Francisco v. Trump*, 897 F.3d at 1244.

### D. The Injunction Should Issue Without Bond.

The DOJ faces no realistic prospect of financial harm, nor do they claim any. The injunction prevents DOJ from requiring unlawful conditions and does not require DOJ to expend any funds or take any affirmative action. Courts routinely waive the bond requirement in public interest litigation of this nature. *See, e.g., City of Chicago v. U.S. Dep't of Just.*, 2026 WL 114294, at *11.

### III.   CONCLUSION

Plaintiffs respectfully request that, like the other Courts[1] addressing this issue, this Court issue a preliminary injunction, enjoining Defendants from imposing, enforcing, or implementing the Discrimination Condition and FCA certification, or requiring that any nondiscrimination certification is to be interpreted as encompassing the current meanings of lawful DEI programs and anti-

---

[1] *City of Chicago v. U.S. Dep't of Just.*, No. 25 C 13863, 2026 WL 114294 (N.D. Ill. Jan. 15, 2026)(injunction including the same DEI certification language); *Cnty. of Santa Clara v. Noem*, 2025 WL 3251660 (N.D. Cal. Nov. 21, 2025); *Hous. Auth*, 2025 WL 3187761; *Fresno II*, 2025 WL 2721390; *Martin Luther King, Jr. Cnty. v. Turner*, 785 F. Supp. 3d 863 (W.D. Wash. 2025*); San Francisco Unified Sch. Dist. v. AmeriCorps*, 789 F. Supp. 3d 716 (N.D. Cal. 2025).

PLTFS' MEMO. OF P&AS ISO PRELIMINARY INJUNCTION

discrimination provisions as those have been interpreted by the United States Supreme Court and Courts of Appeal up to the present.

Dated:  March 30, 2026                    HEATHER FERBERT, City Attorney

By          */s/ Jennifer M. Martin*
                   Jennifer M. Martin
                   Deputy City Attorney

Attorneys for Plaintiff,
CITY OF SAN DIEGO

SUSANA ALCALA WOOD, City Attorney

By          */s/ Elisa Tolentino*
                   Elisa Tolentino

Attorneys for Plaintiff,
CITY OF SAN JOSE

PLTFS' MEMO. OF P&AS ISO PRELIMINARY INJUNCTION

## FILER'S ATTESTATION

I, JENNIFER M. MARTIN, am the ECF user whose identification and password are being used to file this document, I hereby attest that the other above-named signatories concur in this filing.

PLTFS' MEMO. OF P&AS ISO PRELIMINARY INJUNCTION